UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| DANIEL WEILEIN | ) | |
| SANDRA LaFAVE | ) | Bankruptcy No. 04-00667 |
| | ) | |
| Debtors. | ) | |

**ORDER RE MOTION FOR FINDING OF CIVIL CONTEMPT AND TRUSTEE'S REPORT OF SALE**

This matter came before the undersigned on October 27, 2004 pursuant to assignment. Debtors Daniel Weilein and Sandra LaFave were represented by attorney Michael Dunbar. Creditor Scott Bowman was represented by attorneys John Titler and Ann Laverty. After hearing arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (I).

**STATEMENT OF THE CASE**

Trustee filed a Notice and Report of Sale of Property. She proposes to sell the bankruptcy estate's interest in a lawsuit pending in Iowa District Court in Black Hawk County, Weilein v. Bowman, LACV 088675, to Scott Bowman for $1,000. Debtors object to the sale, asserting the sale price is inadequate.

Debtor Daniel Weilein filed a Motion for Finding of Civil Contempt. He asserts Scott Bowman violated the discharge injunction by proceeding with activity in the subject lawsuit. Mr. Bowman resists the contempt motion. He argues that Debtor's liability which is the subject of the lawsuit is excepted from discharge under § 523(a)(19).

Mr. Bowman argues Counts II, III and IV of his counterclaim in the lawsuit have survived Debtor's discharge. Counts II and III assert Iowa and Federal securities law violations, respectively. Count IV asserts Debtor made fraudulent misrepresentations to induce Mr. Bowman to invest in Pangeaa Systems, Inc. Mr. Bowman concedes that Count I, seeking judgment on promissory notes, has been discharged.

Debtors filed their Chapter 7 bankruptcy petition on March 2, 2004. Discharge entered on June 16, 2004. The Black Hawk County lawsuit originated in May 2002 with Debtor's petition against Mr. Bowman alleging slander, interference with business relations, and fraud relating to the parties' business interests in Pangeaa Interment Systems, Inc. In November 2002, Mr. Bowman filed a separate lawsuit in four counts described above, which was consolidated with Debtor's lawsuit. Debtor alleges Mr. Bowman violated the discharge injunction by requesting a trial scheduling conference in these actions in September 2004.

**CONCLUSIONS OF LAW**

Legislation signed into law in 2002, known as the Sarbanes-Oxley Act, disallows debts incurred in violation of securities fraud laws from being discharged in bankruptcy. In re McClung, 304 B.R. 419, 424 (Bankr. D. Idaho 2004). This legislation was added to the Code as subsection (19) to 11 U.S.C. § 523(a), and states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
>
> (19) that--
>
> (A) is for--
>
> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) results from--
>
> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19).

**ISSUES**

Debtor argues that a judgment, order or settlement agreement under § 523(a)(19)(B) must be in existence at the time the bankruptcy petition is filed in order for that section to except a debt from discharge. He also argues that, as to Mr. Bowman's Count III in the state court lawsuit, only the SEC can pursue a securities violation under Federal law and Mr. Bowman has no private right of action thereunder.

**CONCLUSIONS OF LAW**

As § 523(a)(19) was recently enacted, there is little case law interpreting it. See In re Gibbons, 311 B.R. 402, 404 (S.D.N.Y. 2004) (approving application of § 523(a)(19) to case filed before its enactment); In re Simon, 311 B.R. 641, 646 (Bankr. S.D. Fla. 2004) (holding § 523(a)(19) does not violate constitutional requirement for uniformity in bankruptcy laws); McClung, 304 B.R. at 424 (finding State of Idaho Department of Finance had standing to assert § 523(a)(19) exception to discharge); In re Whitcomb, 303 B.R. 806, 810 (Bankr. N.D. Ill. 2004) (applying § 523(a)(19) to prepetition securities fraud settlement agreement). None of the reported cases interpreting § 523(a)(19) address the issues presented here.

On the issue of whether Mr. Bowman may assert a Federal securities law violation, one writer has opined that private plaintiffs cannot utilize the exception in § 523(a)(19)(A)(i). Keith N. Sambur, The Sarbanes-Oxley Act's Effect on Section 523 of the Bankruptcy Code: Are All Securities Laws Debts really nondischargeable?, 11 Am. Bankr. Ins. L. Rev. 561, 573 (2003). The private plaintiff has the ability, however, to plead the elements of subsection (A)(ii) for "common law fraud, deceit, or manipulation in connection with" a

securities transaction. Id. at 574. The Court believes Count III of Mr. Bowman's state court petition can be interpreted to come within the province of subsection (A)(ii), even if it is not viable under subsection (A)(i).

Section 523(a)(19)(B) provides that the discharge exception applies to a securities violation debt that "results from" a judgment, order or settlement agreement. It has been noted that "it is not clear whether the judgment, order or settlement agreement must be entered pre-petition." Prof. G. Ray Warner, Accounting Reform Law Adds Broad Securities Fraud Discharge Exception, 21-SEP Am. Bankr. Inst. J. 6, 44 (2002) (hereinafter "Warner"). Mr. Bowman argues that, like cases under the original version of § 523(a)(9), the language of § 523(a)(19) can be interpreted to encompass debts for securities violations which have not yet proceeded to judgment or settlement.

The original language of § 523(a)(9) excepted from discharge a debt "to the extent that such debt arises from a judgment or consent decree . . . as a result of the debtor's operation of a motor vehicle while legally intoxicated." Congress subsequently rewrote subsection (a)(9) to except from discharge a debt "for death or personal injury caused by the debtor's operation of motor vehicle if such operation was unlawful because the debtor was intoxicated." 11 U.S.C. § 523(a)(9). The Congressional Record explains that the new language was intended to close the loophole which allowed drunk drivers to escape payment to their victims prior to entry of a judgment or consent decree. See S.R. 101-434, at 6 (1990), reprinted in 1990 U.S.C.C.A.N. 4065, 4069.

Section 523(a)(19)(B) requires that the debt "results from" a judgment, order or settlement agreement. "A similar requirement in the original version of the § 523(a)(9) 'drunk driving' exception to discharge was removed in 1990 by Congress precisely because of these interpretive problems." Warner, supra, at 45.

> Nonetheless, most of the cases decided under the pre-1990 version of the drunk driving exception held that a post-petition judgment was sufficient. The courts often lifted the automatic stay and delayed discharge until a judgment could be obtained. However, the cases decided under former § 523(a)(9) may no longer be good law. Those opinions were

> based on policy arguments and congressional intent and were decided before the "plain-language" approach to Bankruptcy Code interpretation had become as firmly entrenched as it is today.

Id. (citations omitted). Another commentator has made a different prediction:

> [T]he bankruptcy courts developed a variety of doctrines that allowed a finding of nondischargeability [under the original language of § 523(a)(9)] even in the absence of a court judgment or consent decree. . . It is possible, even likely, that the experience under the pre-1990 version of section 523(a)(9) will repeat itself for the new nondischargeability provision of section 523(a)(19) and that courts will develop similar doctrines.

Prof. Robert M. Lawless, Some Thoughts for Bankruptcy Practitioners on Sarbanes-Oxley Related Developments, 091803 ABI-CLE 449 (2003).

Analysis of § 523(a)(19) must begin "with the language of the statute itself." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989). When a "statute's language is plain, the sole function of the courts is to enforce it according to its terms.... The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." Id. Focus on the text of the Bankruptcy Code has been the hallmark of Supreme Court bankruptcy jurisprudence for more than a decade. In re Colsen, 311 B.R. 765, 771 (Bankr. N.D. Iowa 2004).

The starting point in statutory interpretation is the existing statutory text. It is well established that when the statute's language is plain, the sole function of the court is to enforce it according to its terms, unless such disposition is absurd. Lamie v. U.S. Trustee, 124 S. Ct. 1023, 1030 (2004).

> If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond

> our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us.

Id. at 1034 (citations omitted). Absent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, the Court's obligation is to apply the statute as Congress wrote it. Hubbard v. United States, 514 U.S. 695, 703 (1995). Policy considerations and equitable concerns are impermissible bases for statutory interpretation when the language of the statute is clear and unambiguous. In re Hen House Interstate, Inc., 177 F.3d 719, 723 (8th Cir. 1999). When there is no conflict between the language of the statue and the legislative history, and the court's "plain language" interpretation is not at odds with the statute's obvious purpose, the statutory language itself must prevail. In re Crowley, 259 B.R. 361, 367 -68 (Bankr. W.D. Mo. 2001).

The court in McClung, 304 B.R. at 424, cited the legislative history relating to § 523(a)(19) which states:

> By enacting § 523(a)(19), Congress intended to "amend the federal bankruptcy code to make judgments and settlements arising from state and federal securities law violations brought by state or federal regulators and private individuals non-dischargeable." S. Rep. No. 107-146, at 11 (2002).

The legislative history also includes the following statement:

> Current bankruptcy law permits wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to hold accountable those who incur debts by violating our securities laws.

S. R. 107-146, at 10 (2002).

The Court also notes that generally, the Bankruptcy Code provides that debtors' and creditors' interests are determined

on the petition date. Section 502(b) states that allowance of claims is determined “as of the date of the filing of the petition. See In re Waterman, 248 B.R. 567, 573 (B.A.P. 8th Cir. 2000). Debtors’ property and exemption rights are also fixed as of the petition date. In re Mahendra, 131 F.3d 750, 757 (8th Cir. 1997) (debtors’ exemption rights are determined as of the petition date); 11 U.S.C. § 541 (property of the estate includes “all legal or equitable interests of the debtor in property as of the commencement of the case”).

**ANALYSIS**

The issues presented are matters of first impression. In the circumstances, the Court need not rule on Debtor's allegation that Mr. Bowman may not pursue a securities violation under Federal law. This is a matter of interpretation of subsection (A)(i) of § 523(a)(19). Even assuming Mr. Bowman has no standing under that provision, subsection (A)(ii) obviously allows exception to discharge for private rights of action for debts arising from securities fraud.

Of more concern is Debtor's argument that a judgment, order or settlement agreement under § 523(a)(19) must be in existence at the time the bankruptcy petition is filed in order to except the debt from discharge. Comparisons between the language of this section and the original language of § 523(a)(9) are apt. The Court is not convinced by Mr. Bowman's argument that "arises from" in former subsection (a)(9) and "results from" in subsection (a)(19) require different interpretations. The Court is aware that some courts interpreted § 523(a)(9) in a manner which allowed it to be applied to debts that had not been reduced to judgment or consent decree prepetition prior to amendment of that section in 1990. The language of the statue, however, is clear on its face and the "plain language" approach to interpretation of the Bankruptcy Code, espoused by the U.S. Supreme Court, is more firmly entrenched than it was over ten years ago.

It is this Court’s conclusion that a judgment, order or settlement agreement must have arisen prior to the bankruptcy filing in order for § 523(a)(19) to except a debt from discharge. Generally, creditors’ rights are fixed at the petition date. There is little if any conflict between the language of the statute and the legislative history. A literal application of the statute does not thwart the

statute's obvious purpose. Debtors subject to securities fraud awards against them will not be able to escape their liability by filing for bankruptcy protection.

The Court is aware that debtors with litigation pending, as is the case here, or facing contingent or unliquidated securities violations claims will be able to discharge their liability through bankruptcy. The statute, however, is clear. If discharge of this type of obligation is to be denied, it must be denied by Congress.

The resolution of this issue does not dispose of Trustee’s Notice and Report of Sale of Property and Mr. Bowman’s objection thereto, or Debtor’s Motion for Finding of Civil Contempt and Mr. Bowman’s resistance thereto. As such, the Court will set a telephonic status conference by separate order to hear the parties’ positions on the effect this ruling has on these pending matters.

**WHEREFORE**, § 523(a)(19) does not apply to the Iowa District Court lawsuits pending in Black Hawk County between Debtor Daniel Weilein and Scott Bowman

**FURTHER**, a telephonic status hearing will be set by separate order to determine the effect of this ruling on Trustee’s Notice and Report of Sale of Property and Debtor’s Motion for Finding of Civil Contempt.

DATED AND ENTERED: December 29, 2004

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE